WELCH *v.* CITIZENS MUTUAL AUTOMOBILE INS. CO.

1. Release—Fraud—Evidence.
    Evidence of fraud, to justify setting aside release in compromise of a contested claim for damages, which has been executed by competent persons, must be clear and positive.

2. FRAUD—RELEASE—EVIDENCE—RELIANCE ON ADJUSTER'S STATE-
MENTS—DOCTORS.

In action for damages for fraud in securing a release from
defendants' insured, a motorist, for injuries to arm sustained
by plaintiff, record *held*, without evidence to sustain verdict for
plaintiff against insurer and its adjuster where it clearly ap-
pears only fraud there might have been was by reason of what
the doctor failed to say when plaintiff consulted him on the
matter of settlement and release, record does not indicate the
doctor did not act in good faith, that he was guilty of any col-
lusion or was an agent of defendant insurer, and record does
show no reliance was placed on statements of defendant ad-
juster by plaintiff, a man of some business experience.

Appeal from Allegan; Miles (Fred T.), J.  Sub-
mitted April 8, 1938.  (Docket No. 56, Calendar
No. 39,848.)  Decided June 7, 1938.

Case by Charles Welch against Citizens Mutual
Automobile Insurance Company, a Michigan corpo-
ration, and Irving Wolbrink for damages for fraud
in settlement made for injuries sustained when
struck by a truck.  Verdict for plaintiff.  Judgment
for defendant *non obstante veredicto*.  Plaintiff ap-
peals.  Affirmed.

*Leo W. Hoffman,* for plaintiff.

*Gore, Harvey & Fisher (Harry Pell,* of counsel),
for defendants.

SHARPE, J.  Plaintiff, Charles Welch, while walk-
ing along the south edge of M-89, an east and west
paved highway, on September 21, 1935, was struck
by a truck driven by John Knox going in a westerly
direction.

Welch was taken to Dr. Corkill's office where it
was discovered that his right arm was fractured at
the elbow.  His arm was set and he was then taken
to the hospital at Douglas.

On September 23, 1935, defendant Wolbrink, an adjuster for defendant insurance company, called on plaintiff and represented to him that he (Wolbrink) was a friend of the Knoxes; that the Knoxes had no property except a small home; that the doctor said plaintiff would be as good as ever in four weeks; and that the Knoxes were willing to pay plaintiff $200 in addition to the hospital and doctor bills. Plaintiff then advised Wolbrink that before making any settlement he wanted to talk to his doctor. He did talk with Dr. Corkill before the agreement was signed. The doctor advised him to accept the offer, but did not volunteer to plaintiff the information which he (Dr. Corkill) had that the insurance company had agreed to pay the hospital and doctor bills, nor did he inform plaintiff of the extent of the injury to his arm. A few days after the release was signed, Wolbrink brought a check for $200 to the hospital for plaintiff. The check was dated September 28, 1935, and bore the heading of defendant insurance company.

About six weeks after the settlement, plaintiff learned that his arm was paralyzed with a decided wrist drop. In May, 1937, plaintiff brought action against the defendants herein and claimed that in making the settlement, he relied upon the statements made by Wolbrink and was deceived; that his claim against the Knoxes was in fact worth more than the amount received in settlement; and that by reason of the fraud practiced upon him, he lost his cause of action against the Knoxes. He affirmed the settlement and claimed damages caused by the fraudulent representations and conduct of defendants. The cause came on for trial and at the close of plaintiff's proofs, defendants made a motion for directed verdict upon the theory that the evidence failed to show any liability on the part of the Knoxes to plaintiff;

and that plaintiff had made a valid settlement of his claim for damages. The motion was taken under advisement and the cause submitted to the jury which thereupon returned a verdict in favor of plaintiff. Subsequently, the trial court granted defendants' motion and entered a judgment of no cause of action. Plaintiff appeals.

In the case at bar, plaintiff did not have a certain and uncontested claim for damages. He was a man with some business experience. Before his injury he ran a pulp wood camp for about five years, had kept records of his transactions and was familiar with checks. The record shows that when plaintiff signed the release, he knew that his arm was broken; and that when the insurance agent came to talk to him about a settlement, he did not rely upon the statements made by the agent, but insisted upon talking to Dr. Corkill. The record clearly shows that if plaintiff was defrauded it was not because of what the agent said, but rather by what the doctor did not say. The trial court found as a fact that "there is no allegation or proof that the doctor did not act in good faith, or that he was guilty of any collusion. * * * The testimony indicates that he did act fairly."

In *Story* v. *Page,* 280 Mich. 34, 41, we said:

"Parties may not, after executing written releases in pursuance of a compromise of a claim, not free from doubt, promiscuously change their minds, and set aside the settlement, except where the proof of the fraud is clear and positive. Such conditions did not exist in the present case. The releases were binding on the parties."

The testimony contained in the record does not bear out the claim that plaintiff was defrauded by defendants. Plaintiff did not rely upon the state-

ments made to him by the insurance adjuster, nor were there any untruths told him by his doctor. He had several days from the time he agreed to make the settlement until he actually was paid the sum agreed upon. In deciding this cause we have in mind that the suit is against the insurance company and its agent Wolbrink. There is no suit against the doctor, nor can it be said that the doctor was the agent of the insurance company. We fail to find that plaintiff relied upon any statements made by the insurance company or its agent.

The judgment of the trial court is affirmed. Defendants may recover costs.

WIEST, C. J., and BUTZEL, BUSHNELL, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.